## NELSON T. BURROUGHS *v.* C. B. VANCE.

1. TAX SALE. *Power of collector after bidding.*

So long as a tax sale remains *in fieri*, the collector has power to deal further with the lands. He may resell or permit the owner to pay his taxes, including costs and damages.

2. SAME. *Fraud or mistake.*

If a tax collector, before the sale, receives a check sufficient in amount to pay the owner's taxes on a large body of land, and treats the same as payment on all the land except one small tract, which he sells, and the check is, after the sale, but before the execution of the tax deed to the small tract, actually collected in money and paid into the proper treasury, the sale must have been either mistakenly or fraudulently made.

3. SAME. *Amendment of pleading.*

If it be manifest that a tax sale was made through fraud or mistake, the person damaged thereby can amend his pleadings, after a reversal of a decree against him by the supreme court, so as to charge the same.

4. SAME. *Presumption as to payment of bid.*

It will be presumed that a purchaser at a tax sale paid his bid at the date of his deed, there being no evidence to the contrary.

FROM the chancery court of Quitman county.

HON. A. H. LONGINO, Chancellor.

The bill was filed by Vance, appellee, to confirm a tax title to five hundred and sixty acres of land, in section thirteen, township twenty-seven, range one, east, in Quitman county. Burroughs, appellant, owned fourteen thousand acres of land in that county, constituting practically one body, embracing that in suit; he had for several years paid his taxes thereon by

sending the collector his check for the amount thereof. In February, 1894, he sent to the collector, from Chicago, bank exchange on New York, the collector having previously agreed to receive the same in payment, for an amount in excess of his taxes for 1893, including all costs and damages; the excessive amount having been furnished by the collector as the proper sum. This check was received by the collector March 2, 1894, three days before sale day. Upon receipt of the check, the collector wrote Burroughs as follows: "I will forward your tax receipt as soon as I hear from check. Will not sell lands." The check was forwarded by the collector to his bank at Jackson, Miss., duly indorsed by him, and the bank received the same, and credited the collector with the amount thereof on the morning of March 5, the day of the sale. Notwithstanding the above stated facts, the collector sold the lands in suit, but none other of appellant's tract, on the fifth of March, 1894, and the same was bid off by Vance, appellee. On the ninth of March, 1894, the collector made out and sent appellant the regular statutory tax receipt for payment on all of his lands, including that in suit, and also returned to him the excess of the check over all that was due. He also charged himself with the full amount collected from appellant on that day, and paid the same into the proper treasury. The tax deed to Vance was executed upon and dated March 31, 1894, reciting a sale on the fifth of March, 1894, for the taxes of 1893.

*Mc Willie & Thompson*, for appellant.

The defendant earnestly endeavored to pay his taxes before the sale, and thought he had done so; was assured by the collector that payment had been made. He did pay them before the sale, if the payment of the check have relation back to the date of its receipt by the collector, and we insist that it did so relate back.

If the payment is not to be imputed to the date the check was received, then the collector had accepted the check and

promised not to sell the land.   The receipt, though dated after the sale, must be taken as showing that the payment was a valid one, for, unlike the case of *Edmondson* v. *Ingram*, 68 Miss., 32, we find that in this case the tax receipt is in the form prescribed by statute as the only valid evidence of payment, and the money actually reached the proper treasuries.

The payment on the date of the receipt must also be taken as a valid one, for the reason, we have a right to assume on the facts shown, that the bidder had not paid the purchase money on March 9, four days after the sale, and the collector was free, either to accept payment from the owner or resell the land.

The payment, as of date of the receipt, is good for still another reason.   Land sold for taxes can only be redeemed from a tax sale by proceedings before the clerk of the chancery court, and such proceedings can only be had after the deed has been filed with that officer.   Sales are made in this state on the first Monday of March in each year.   The collectors are allowed until the first Monday of April in which to file the deeds with the clerks of the chancery courts.   It cannot be that there is one month during the year in which taxes cannot be paid at all.   Such is not the policy of the law surely.   The only reasonable construction of the statutes is that which recognizes the right of the collector to collect until the time when the clerk of the chancery court can receive the taxes.   We insist, therefore, that the payment to the collector was a perfectly good payment if made on March 9.   It is just as easy to hold the collector of taxes liable to the tax purchaser, in a case like this one, as it is to work out the rights, or want of them, of the taxpayer.

As the draft was a good enough payment on all the rest of appellant's 14,000 acres of land to prevent a sale, it is hard to see why it failed to answer the same purpose in respect to section 13, and we are driven to the conclusion that the sale of this especially valuable section was the result of either mistake or fraud, in neither of which events should it stand, an actual payment of the taxes being affirmatively shown.

*Calvin Perkins,* for appellee.

The sole question in this case is whether or not the taxes for which the land in controversy was sold were paid before the sale. The receipt relied on by the appellant as evidencing the payment of the taxes, was not made out or intended to be made out until the ninth day of March, 1894, which was four days after the land had been sold to the appellee and the price paid to the sheriff by him. There was no contention in the evidence offered by the appellant, and excluded by the court, that the tax receipt was wrongly dated. The evidence was that the sheriff, who had received the check for the taxes three days before the sale, wrote the taxpayer that he would send him a receipt when he heard from the check. The evidence further shows that the check, which was drawn on a bank in New York, reached Jackson, Mississippi, for collection on the day of sale. Consequently, the sheriff could not have heard from it until after the day of sale. The presumption is that he had just heard from it on the ninth day of March, 1894, when he made out the tax receipt offered in evidence. The chancery court excluded this tax receipt, because it was made out and bore date after the land had been sold for taxes. Before the sale there had been no valid payment of the taxes. After the sale the sheriff had exhausted his power to collect the taxes of 1893 on the land in controversy. All of the evidence, other than the tax receipt of March 9, 1894, was clearly incompetent under the decision in *Edmondson* v. *Ingram,* 68 Miss., 32.

Argued orally by *T. A. McWillie,* for appellant.

WOODS, C. J., delivered the opinion of the court.

While the appellee bid off the lands at the tax collector's sale on March 5, 1894, no deed was made to him by the collector until March 31, 1894. In the absence of any evidence as to when the money bid by him for the lands was paid, we assume that he secured his tax deed when he made good his bid by pay-

ing the amount of it to the collector. Three weeks, then, before the collector received the purchase money and made his deed, and thereby completed the sale, the appellant, Burroughs, had paid the taxes due, and obtained the tax collector's receipt in the form prescribed by law. So long as the sale to appellee was *in fieri*, the sheriff had power to deal further with the lands. He might have sold again to a stranger, or he might have permitted the owner to pay his taxes, including costs and damages. Looking at this transaction in a light most favorable to the collector, on the record before us, we assume that the collector elected to pursue the latter course, and four days after the sale, and twenty-one days before the intending purchaser paid his bid, and twenty-one days before the collector executed the deed to the bidder, and while the collector had the undoubted power to resell, he permitted the owner to pay in full.

That there was fraud or gross mistake in the sale to appellee on March 5, is indisputable. The very check of $1,178, given to the collector by Burroughs, the appellant, was accepted and treated and used by the tax collector in payment of all taxes on more than 13,000 acres of appellant's land, and yet on this particular 570 or 580 acres involved in this litigation, that very same check was not accepted and used as payment by the tax collector. The whole amount of the check was promptly paid, and all taxes due on all of appellant's 14,000 acres of land, including the 570 acres embraced in this suit, was entered on the collector's cash book as paid, and was actually paid by him into the proper treasury.

On a remand of this case to the court below, if appellant shall desire to amend his answer so as to charge fraud or mistake in the sale to appellee, he should be allowed to do so, with opportunity given also to take further evidence to support his answer.

In the absence of any proof that appellee paid the amount of his bid before appellant actually paid the taxes due in money

and obtained the proper receipt, the court below should not have excluded appellant's evidence.

*Reversed.*